IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BENITA ARCHARD, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) CIVIL ACTION NO. 08-0746-CG-N ) |
| JOHN E. POTTER, Postmaster General, United States Postal Service, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This cause is before the court on defendant's motion for summary judgment (Doc. 26), plaintiff's opposition thereto (Docs. 30, 32), and defendant's reply in support of summary judgment (Doc. 34). The court finds that plaintiff failed to exhaust her administrative remedies concerning her claim for breach of a settlement agreement and that defendant did not breach the settlement agreement. The court further finds that plaintiff has not established a prima facie case of retaliation and has failed to show pretext. Therefore, defendant's motion is due to be granted.

## FACTS

Plaintiff filed her complaint on January 1, 2009, seeking declaratory and injunctive relief, back pay and compensatory damages "to redress the defendant's alleged breach of a settlement agreement resolving a complaint of discrimination in employment." (Doc. 1, p. 1). Plaintiff's complaint asserts a claim for breach of contract and for retaliation. (Doc. 1, p. 4). Plaintiff is an African American female who has been employed with the USPS since 1991. In 1998, plaintiff bid for and was assigned to a Training Technician position at the USPS Mobile, Alabama

1

Processing and Distribution Center (Mobile P&DC). (Doc. 27-3, p. 10). Plaintiff worked the Tour III shift which was from 6:00 p.m. to 2:30 a.m and she had weekends off. (Doc. 27-3, p. 18; Doc. 30-1, p. 1 ). On March 26, 2003, plaintiff and another training tech, Joan Gray, a white female, were advised that "due to the change in operational needs," their positions were going to be abolished, and that effective April 5, 2003, they would become "unassigned Full Time Regulars". (Doc. 30-1, p. 1-2). As unassigned regular processing clerks, the plaintiff and Ms. Gray had to either bid on residual vacancies that became available or risk being involuntarily assigned to a position. (Doc. 27-2, ¶ 19). The Collective Bargaining Agreement (CBA) states that Unassigned Regular employees "shall be assigned to residual full-time duty assignments in the same or higher salary level for which the employees meet the minimum qualifications." (Doc. 27-2, p. 42). The CBA further details the order in which such assignments should be made. (Doc. 27-2, pp. 42-43). Plaintiff contends that although she reported for her new position to the Mail Processing and Distribution Center as instructed, Ms. Gray was allowed to continue working in the training area. (Doc. 30-1, p. 2). Plaintiff states that she also learned that the manager of Distribution Operations, Joel Hall, conducted a telephone conference call with Ms. Gray to discuss issues relating to training and did not include plaintiff in on the conference call. (Doc. 30-1, p. 2).

In May 2003, plaintiff filed an EEO complaint alleging racial discrimination in the abolishment of her training position and asserting that she had been discriminated against by the agency's failure to include her in the conference call. (doc. 30-1, p. 2). On March 4, 2004, the parties appeared before an administrative judge of the EEOC and entered into a settlement agreement, thereby resolving plaintiff's discrimination complaint. (Doc. 1, ¶ 4). The settlement

agreement, which was read into the record during the EEOC hearing, provides as follows:

> The parties agree that Ms. Archard's present position will be modified to include ad hoc training and scheme maintenance duties as necessary. Her hours and off days will remain as present. There will be no reprisal towards the complainant.

(Doc. 30-1, p. 3).[1]

By letter dated July 16, 2004, Shelia Rose, USPS Human Resources Specialist, notified plaintiff that she had an opportunity as an unassigned regular to express her preference for two different vacant residual jobs with descriptions attached. (Doc. 27-3, pp. 30-32, 58). The letter stated that plaintiff should return her preference selections to Human Resources no later than July 24, 2004, and warned that if her response was not received within the specified time limit, plaintiff may be assigned to any unfilled vacancy. (Doc. 27-3, pp. 30-32, 58). Plaintiff did not express a job preference, but instead sent a letter to Ms. Rose on July 22, 2004, stating that her settlement had awarded her Saturdays and Sundays off with her current hours on Tour III and asking why she had not received a copy of the form that reflected this personnel action. (Doc. 27-3, pp. 32-33, 59). Ms. Rose responded with a routing slip stating that she had added the duties per the settlement but that she did not see anything that stated that plaintiff would no longer be an unassigned regular. (Doc. 27-3, pp. 34-37, 60). Ms. Rose also requested that plaintiff let her know if plaintiff's understanding of the settlement was that plaintiff would not be an unassigned regular. (Doc. 27-3, pp. 34-37, 60).

On September 14, 2004, after plaintiff failed to express a preference for the residual jobs,

---

[1] The court notes that the language quoted was included in defendant's brief with a cite to "Hearing Transcript at __". The transcript of the hearing was not provided to the court. However, there appears to be no dispute concerning the accuracy of the quoted language. The language appears to be consistent with defendant's description of the settlement and with plaintiff's deposition testimony regarding the settlement.

3

plaintiff was reassigned to a residual Small Parcel and Bundle Sorter (SPBS) position, pending qualification through training. (Docs. 27-2, ¶ 20; 27-3, pp. 39-41, 63). Plaintiff's schedule under the new position was Saturdays and Sundays from 3:30 p.m. to 12:00 midnight., Mondays, Tuesdays, and Fridays from 3:00 p.m. to 11:30 p.m. and Wednesdays and Thursdays off. (Doc. 27-3 pp. 39-41, 63-64). Plaintiff believed this reassignment breached her settlement agreement and that it was motivated by racial and sexual discrimination, but she did not file an EEO complaint regarding the new assignment. (Doc. 27-3, pp. 41-42). Plaintiff states that she called and talked to the EEO Dispute Resolution Specialist in Birmingham but that she cannot locate any written communications she had with the EEO. (Doc. 27-3, p. 64). Plaintiff did file a grievance on September 30, 2004, alleging that her new assignment violated the settlement agreement. (Doc. 27-2, ¶ 22, Ex. 4). The USPS denied the grievance, finding that plaintiff's reassignment did not violate the settlement agreement. (Doc. 27-3, p. 66). The decision stated that "nothing in the settlement suspends any elements of the Collective Bargaining Agreement" (CBA) and that plaintiff "remained an unencumbered unassigned employee, at risk of being slotted into any position she did not bid on." (Doc. 27-3, p. 66). Plaintiff also filed a grievance on October 25, 2006, regarding her being required to complete the training for the new position. (Doc. 27-2, ¶ 22, Ex. 4).

There was a delay in plaintiff's training due to the implementation of a new web-based training system and the subsequent start up of a new facility requiring training of approximately 50 new employees, which monopolized available training consoles. (Doc. 27-3, ¶ 21, Ex. 4). Plaintiff continued performing the duties of her existing position and maintained Saturdays and Sundays off until she had completed the training and became qualified for the new position.

4

(Doc. 27-3, pp. 43-44). Plaintiff completed the training in December 2006 and was placed in the position on December 26, 2006. (Doc. 27-2, ¶ 23). Plaintiff testified that there was nothing that prevented her from bidding on other jobs between notice of her reassignment in September 2004 and her placement in the position in December 2006. (Doc. 27-3, pp. 54-55).

On January 11, 2007, plaintiff submitted an Information for Pre-Complaint Counseling form to the USPS alleging a breach of the settlement agreement as a result of her off days being changed. (Doc. 1, ¶ 9). On February 13, 2007, the defendant issued a decision finding no breach. (Doc. 1, ¶ 10). Plaintiff appealed to the EEOC in March 2007 and on October 3, 2007, the EEOC affirmed the defendant's finding that there had been no breach of the settlement agreement. (Doc. 1, ¶¶ 11, 12). Plaintiff filed the current lawsuit January 1, 2009.

## LEGAL ANALYSIS

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted." Anderson, at 249-250. (internal citations omitted).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e) "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir.

1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

## II. Discussion

### A. Breach of Contract

Defendant moved for summary judgment asserting that plaintiff failed to exhaust her administrative remedies with regard to plaintiff's breach of contract claim, because she did not give notice of the alleged breach of the settlement agreement within 30 days of learning of the breach. Defendant asserts that such notice was required by EEOC regulation 29 C.F.R. § 1614.504, which provides the following:

> (a) Any settlement agreement knowingly and voluntarily agreed to by the parties, reached at any stage of the complaint process, shall be binding on both parties. Final action that has not been the subject of an appeal or civil action shall be binding on the agency. If the complainant believes that the agency has failed to comply with the terms of a settlement agreement or decision, the complainant shall notify the EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance. The complainant may request that the terms of settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased.

29 C.F.R. § 1614.504(a). Plaintiff submitted her Information for Pre-Complaint Counseling form to the USPS alleging a breach of the settlement agreement on January 11, 2007, and then appealed the decision to the EEOC in March 2007. However, plaintiff was reassigned on September 14, 2004, more than two years before she filed her Information for Pre-Complaint Counseling. Plaintiff did not notify the EEO Director in writing of the alleged breach of the settlement within 30 days after she was notified of the reassignment. Noncompliance with the 30-day notice requirement constitutes failure to exhaust administrative remedies. Sanders v. Reno, 186 F.3d 684, 685 (5th Cir. 1999). Exhaustion procedures are mandatory. Id.; see Brown v. Gen. Servs. Admin., 425 U.S. 820, 832-33, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976).

7

Plaintiff contends that she was unaware of the 30 day requirement. However, "ignorance of the law will not excuse any person, either civilly or criminally." Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 599, U.S. —, 130 S.Ct. 1605, 2010 WL 1558977, *5 (U.S. 2010) (citation omitted). Plaintiff also contends that she did comply with § 1614.504(a) because she filed her second EEO complaint in January 2007, within 30 days from being placed in the new position. However, the regulation requires that a complainant notify the EEO within 30 days of when the complainant knew or should have known of the alleged noncompliance. Plaintiff clearly knew of the alleged breach before she was placed in the position since she received written notice of the reassignment on September 14, 2004. In fact, plaintiff filed a grievance with the USPS on September 30, 2004, asserting that the reassignment breached the settlement agreement.

Plaintiff also asserts that the time limit should be tolled. Plaintiff cites case law which holds that time limitations may be equitably tolled:

> (1) during the pendency of an action against the same parties and involving the same cause of action in a state court which had jurisdiction over the subject matter of the suit but was the wrong forum under state law; (2) when the defendant concealed facts that support the plaintiff's cause of action, until such time as the plaintiff knew or should have known of these facts; and (3) when the EEOC misleads a complainant about the nature of his rights under Title VII.

Jones v. Wynne, 266 Fed. Appx. 903, 906 (11th Cir. 2008) (citing Chappell v. Emco Mach. Works Co., 601 F.2d 1295, 1302-03 (5th Cir. 1979)[2]). However, plaintiff has presented no evidence that there was a related action in State Court, that the defendant concealed facts, or that the EEOC misled plaintiff about the nature of her rights. Plaintiff points to there being no statement of her rights attached to or included in the settlement agreement. However, plaintiff has presented no authority requiring such notice. As stated above, ignorance of the law is not a valid defense. "[L]ack of knowledge of applicable filing deadlines is not a basis for tolling."

---

[2] Decisions of the Former Fifth Circuit filed prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Barrow v. New Orleans S.S. Ass'n, 932 F.2d 473, 478 (5th Cir. 1991).

Moreover, plaintiff's breach of contract claim fails because the court finds that there was no breach. "A settlement agreement is a contract and, as such, its construction and enforcement are governed by principles [of] general [state] contract law." See Schwartz v. Fla. Bd. of Regents, 807 F.2d 901, 905 (11th Cir. 1987) (citing Wong v. Bailey, 752 F.2d 619, 621 (11th Cir. 1985)). "Words in a contract are to be given their plain and ordinary meaning, and it is not for the court to add or subtract any language from the face of a clearly worded agreement." Schwartz, 807 F.2d at 905 (citing Robin v. Sun Oil Co., 548 F.2d 554, 557 (5th Cir. 1977)). The court is not permitted to add terms to a settlement that were not contemplated by the parties. See Schwartz, 807 F.2d at 905 (citing Fla. Educ. Ass'n, Inc. v. Atkinson, 481 F.2d 662, 663 (5th Cir. 1973)).

The court finds that the plain and ordinary meaning of the settlement agreement simply required the addition of training and maintenance duties and set the hours and off days for plaintiff's then present position. Nothing in the settlement indicated that plaintiff would no longer be an "Unassigned Regular" or that she would not be subject to the elements of the CBA which required her to bid on vacancies or risk being involuntarily assigned to a new position. Plaintiff contends that the reassignment must breach the agreement or the object of the settlement would be illusory. However, plaintiff got exactly what she asked for. Plaintiff sought to be treated equally to Joan Gray who was an Unassigned Regular and was required to bid on vacancies or risk being involuntarily assigned. The evidence merely shows that Ms. Gray was permitted to continue working in the training area until she was reassigned to a vacant position. The settlement agreement gave plaintiff the duties she wanted while she remained in that position.

Plaintiff, citing Epstein v. Dep. of Health and Human Services, EEOC Request No. 05970671 (July 2, 1998), appears to argue that defendant should not be allowed to offer something in settlement that it did not have the authority or intention to adhere to. Plaintiff cites

9

additional case law, Cosme v. Henderson, as Postmaster General, 287 F.3d 152 (2d Cir. 2002), which holds that the agency could agree as part of an accommodation to suspend requirements contained in the CBA. However, as defendant points out, there is no evidence that defendant offered to suspend the requirement that as an Unassigned Regular she was required to bid on vacancies or risk being reassigned. Defendant did not offer to make her Unassigned Regular position permanent. Defendant only agreed to add certain duties and to keep her working hours and days the same for her then current position. Defendant presumably had authority to enter into the agreement offered and has adhered to the agreement. As such, the court finds that summary judgment should be entered in favor of defendant on plaintiff's claim for breach of contract.

**B. Retaliation**

Courts have found that to the extent a plaintiff's retaliation claim is simply a restatement of her non-compliance claim, the retaliation claim is also barred by her failure to comply with the time limitations of § 1614.504(a). See e.g. Eneje v. Ashcroft, 67 Fed.Appx. 901, 905 -906 (6th Cir. 2003). Plaintiff cannot avoid the exhaustion requirement imposed by § 1614.504(a) simply be couching an enforcement claim as a retaliation claim. However, considering this court found above that the reassignment did not breach the agreement, the court, looking at the facts in the light most favorable to plaintiff, views plaintiff's retaliation claim as distinct and separate from the original claims asserted in her 2003 EEO complaint and from her claim for breach of the binding settlement agreement entered in the 2003 EEO action.[3]

A plaintiff may prove retaliation by relying on either direct, circumstantial, or statistical evidence. See Walker v. NationsBank of Florida N.A., 53 F.3d 1548, 1555 (11th Cir. 1995). Direct evidence is evidence which, "if believed, proves the existence of discriminatory motive

---

[3] To the extent plaintiff reasserts the claims asserted in her 2003 EEO complaint, those claims are barred.

'without inference or presumption'" Hamilton v. Montgomery County Bd. of Educ., 122 F.Supp.2d 1273, 1279 (M.D. Ala. 2000) (quoting Carter v. Three Springs Residential Treatment,132 F.3d 635, 641 (11th Cir. 1998)). As the U.S. District Court for the Middle District of Alabama explained:

> Not only must it be evidence of discriminatory 'actions or statements of an employer' but the actions or statements at issue must 'correlate to the discrimination or retaliation complained of by the employee.' Further, the statements 'must be made by a person involved in the challenged decision' and must not be subject to varying reasonable interpretations.

Id. (quoting Lane v. Ogden Entertainment, Inc., 13 F.Supp.2d 1261, 1274 (M.D. Ala. 1998)). Plaintiff has submitted no direct evidence of retaliation. None of the evidence offered proves without inference or presumption that the persons who made the employment decisions did so because plaintiff previously filed grievances or complaints. Plaintiff's claim relies solely on circumstantial evidence.

A plaintiff may attempt to show retaliation based on circumstantial evidence through the application of the McDonnell Douglas burden-shifting analysis established by the Supreme Court. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the McDonnell Douglas framework, a plaintiff must first raise an inference of retaliation by establishing a prima facie case. See Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) (citing Combs v. Plantation Patterns, 106 F.3d 1519, 1527-28 (11th Cir. 1997)).

> A prima facie case of retaliation under Title VII requires the plaintiff to show that:
>
> (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001).

Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008). The defendant does not dispute that in 2003, plaintiff engaged in protected conduct when she filed an EEO complaint. However, defendant disputes that plaintiff's reassignment was adverse and that there is a causal connection between the reassignment and her previous complaint.

To maintain a claim of retaliation, the alleged adverse action must be "materially adverse," which means "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006). To be actionable, the adverse action must be "likely to chill the exercise of constitutionally protected speech." Stavropoulos v. Firestone, 361 F.3d 610, 618 (11th Cir. 2004). The Supreme Court has characterized the anti-retaliation provision as protecting an individual not from all retaliation, but from retaliation that produces injury or harm. Burlington, 126 S.Ct. at 2414. The acts must be material and significant and not trivial. Id. 2405, 126 S.Ct. at 2415. The court notes that there is some dispute as to whether her overall pay is less or more in the new position compared to her position as an Unassigned Regular.[4] Plaintiff is unsure whether her new pay results in a net gain or loss. Since it is plaintiff's burden to present evidence that the position is adverse, the court finds that she has not shown that there is a difference in pay. However, plaintiff's days off and her duties have been changed. It was apparently very important to plaintiff that she have weekends off. Plaintiff states that the new position, unlike her previous position, requires extensive manual labor which has had adverse effects on her health. Looking at the facts in the light most favorable to plaintiff, the court finds that plaintiff suffered an adverse action when she was reassigned.

As to the connection between the alleged adverse action and plaintiff's protected activity, plaintiff offers evidence that the decision makers were aware of and even participated in the EEO and grievance investigations and hearings and were even involved in the abolishment of plaintiff's prior position that was the subject of plaintiff's first EEO complaint. However, this evidence merely shows that the decision makers had knowledge of the protected activity and that some of the management personnel in charge of making such decisions remained the same. The fact that the decision makers in the prior alleged adverse action in 2003 may also be responsible

---

[4] Plaintiff asserts that in her new position she misses one hour of night differential pay, but defendant points out that she is paid more for working on Sunday.

for her new assignment does not show a causal connection.

Plaintiff also argues that the temporal proximity between her protected activity and her reassignment establishes a causal link. The causal link prong may be satisfied "by showing close temporal proximity between the statutorily protected activity and the adverse employment action." Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007). The temporal proximity must be "very close" if there is no other evidence tending to show causation. Id. There must be a close temporal proximity between the decision-maker's knowledge of the protected conduct and the adverse action. See Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004). There appears to be no dispute that the decision makers knew of plaintiff's EEO complaint. However, defendant contends that the events are too far apart to show a causal link. Defendant points out that plaintiff filed her EEO complaint in May 2003 and she was reassigned in September 2004, approximately 18 months later. However, plaintiff's EEO action continued through March 4, 2004, when the parties entered into the settlement agreement. Thus, the length of time between the ongoing EEO action and plaintiff's reassignment was approximately 4 months. The Eleventh Circuit has found that "in the absence of any other evidence of causation, a three and one-half month proximity between a protected activity and an adverse employment action is insufficient to create a jury issue on causation." Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006); see also Thomas, 506 F.3d at 1364 (holding that a three to four month period between the protected activity is not enough to show "very close" temporal proximity); Higdon, 393 F.3d at 1221 ("By itself, the three month period ... does not allow a reasonable inference of a causal relation between the protected expression and the adverse action." citing Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001)). Thus, a causal link between the protected activity and the adverse action cannot be established in this case by the temporal proximity alone. There being no other evidence tending to show a causal relationship, the court finds that plaintiff has not demonstrated a prima facie case of retaliation.

Even if plaintiff could establish a prima facie case, the court finds that her retaliation

claim would still fail. Once plaintiff establishes a prima facie case, the burden shifts to the defendant, who must "proffer a legitimate, non-discriminatory reason for the adverse employment action. The employer's burden is exceedingly light." Hamilton, 122 F.Supp.2d at 1280 (quoting Meeks v. Computer Assoc. Int'l, 15 F.3d 1013, 1021 (11th Cir. 1994) (internal quotations omitted)). If the defendant proffers a legitimate reason for the employment decisions, the burden then shifts back to plaintiff, who must show that the employer's proffered reasons are pretextual, or merely a cover for discrimination. Id. "At the pretext stage, in order to survive summary judgment, Plaintiff[s] must provide sufficient evidence to allow a reasonable fact finder to conclude, at a minimum, that the proffered reasons were not actually the motivation for the employer's decision." Miller v. Bed, Bath & Beyond, Inc., 185 F.Supp.2d 1253, 1270 (N.D. Ala. 2002) (citing Combs, 106 F.3d at 1538). Plaintiff may do this "(1) by showing that the employer's legitimate non[retaliatory] reasons should not be believed; or (2) by showing that, in light of all of the evidence, a [retaliatory] reason more likely motivated the decision." Id. (citations omitted). "This is done by pointing to 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable factfinder could find them unworthy of credence.'" Hamilton, 122 F. Supp.2d at 1281 (quoting Combs, 106 F.3d at 1539). The ultimate burden of persuasion remains with the plaintiff at all times in cases involving merely circumstantial evidence. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

Defendant reassigned plaintiff because there were vacant positions and plaintiff was an Unassigned Regular. The CBA states that Unassigned Regular employees shall be assigned to residual full-time duty assignments. The CBA further details the order in which such assignments should be made. Plaintiff asserts that at the time of her reassignment there were at least two unassigned full-time regulars employed by the agency, such as Marvin Edwards and Odessa Gordon, who were not forced to accept a re-assignment to SPBS or elsewhere. However, there is no evidence of any of the particular circumstances surrounding these employees. For

14

instance there is no evidence concerning these employees' qualifications, their seniority, the duties they performed while designated as an Unassigned Regular, or whether they were in the process of bidding for other positions. The court notes that the CBA states that Unassigned Regulars "who are detailed to nonbargaining positions are considered to be unavailable for assignment ..." (Doc. 27-2, p. 43). Plaintiff has not offered any evidence that these other employees were more qualified for or were more appropriate choices for the position to which plaintiff was reassigned. The court also notes that defendant offered plaintiff a chance to express an interest in two vacant positions and only chose one for her after she failed to express a preference. The court finds that plaintiff's arguments do not tend to show that defendant's proffered reasons for reassigning plaintiff should not be believed.

Although temporal proximity can sometimes be sufficient to establish a causal link, temporal proximity alone is insufficient evidence of pretext to survive summary judgment. Padron v. BellSouth Telecommunications, Inc., 196 F.Supp.2d 1250, 1257 (S.D. Fla. 2002) ("Standing alone against Defendant's strongly supported legitimate reason for terminating [plaintiff], temporal proximity does not amount to more than a scintilla of evidence of retaliation."); Wellenbusher v. National Service Industries, Inc., 2003 WL 23218084, *4 (S.D. Fla. 2003) ("Simply pointing out the fact that [plaintiff] was terminated soon after she announced her pregnancy does not meet the summary judgment requirement for specific facts showing that there is a genuine issue."); Swanson v. General Servs. Admin., 110 F.3d 1180, 1188 (5th Cir.), cert. denied, 522 U.S. 948, 118 S.Ct. 366, 139 L.Ed.2d 284 (1997)("Close timing between an employee's protected activity and an adverse action against him may provide the "causal connection" required to make out a prima facie case of retaliation. However, once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive."); see also Armstrong v. City of Dallas, 997 F.2d 62, 67 (5th Cir. 1993); Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278 (11th Cir. 1997) (ADA); Mize

v. Jefferson City Bd. of Educ., 93 F.3d 739, 745 (11th Cir. 1996) (First Amendment retaliation); Dollar v. Shoney's, Inc., 981 F.Supp. 1417, 1420 (N.D.Ala. 1997) (FMLA); Dillon v. Carlton, 977 F.Supp. 1155, 1160 (M.D. Fla. 1997) (FMLA), aff'd, 161 F.3d 21 (11th Cir. 1998) (Table). Summary judgment is proper where the defendant offers legitimate reasons and the employee only offers temporal proximity. See Wascura v. City of S. Miami, 257 F.3d 1238, 1247 (11th Cir. 2001) (affirming summary judgment for employer where legitimate reasons for the termination decision were offered by the defendant and employee presented virtually no evidence of discrimination, other than temporal proximity of the events). In this case, the temporal proximity was not sufficiently close to the adverse action to sustain a causal connection and plaintiff has failed to offer any other evidence tending to show weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons. Therefore, the court finds that summary judgment should be granted in favor of defendant as to plaintiff's retaliation claim.

## **CONCLUSION**

For the reasons stated above, defendant's motion for summary judgment (Doc. 26), is **GRANTED**.

**DONE** and **ORDERED** this 12th day of May, 2010.

                                            /s/ Callie V. S. Granade
                                            UNITED STATES DISTRICT JUDGE